## McLeod vs. Bertschy.

1. *Right of plaintiff to dismiss, where there is a counterclaim.* 2. *Res adjudicata.*

1. The decision heretofore made in this case (32 Wis., 205), that where defendant has interposed a *counterclaim*, plaintiff cannot (on payment of costs) *dismiss the whole cause*, including such counterclaim, adhered to and reaffirmed.
2. Even if that decision were erroneous, it must be regarded as *res adjudicata* in the present action.
3. Plaintiff, a resident of New York, having moved the court below to dismiss the whole cause, on the ground that it would subject him to great inconvenience and expense to defend in this state against defendant's counterclaims, an order denying such motion is affirmed.

APPEAL from the County Court of *Milwaukee* County.

The action being upon a written contract, and the answer, in addition to certain matters alleged as a defense, having set up an equitable counterclaim for a reformation of the contract, and also a counterclaim for alleged breaches by plaintiff, of the contract, the plaintiff entered a side-bar order for the discontinuance of the action on payment of defendant's costs, and notified defendant of such discontinuance and of his readiness to pay the costs, etc. Defendant, however, noticed the cause for trial, and the court refused to strike it from the calendar on plaintiff's motion; and that order was affirmed by this court, on appeal (32 Wis., 205); it being held that plaintiff, by his side-bar order, could discontinue the cause only as to his ·own alleged causes of action, and not as to defendant's coun· terclaim. The cause being remitted to the county court (in June, 1873), plaintiff moved that court for leave to vacate said side-bar order, and that thereupon an order be made that the whole action, including the counterclaims, be discontinued at plaintiff's cost, on such terms as the court should impose. This motion was based on " all the records, entries and files in

the action," and upon an affidavit of one of plaintiff's attorneys. This affidavit, after reciting the previous proceedings and decisions in the action, and stating that the side-bar order above. mentioned was entered by plaintiff under a belief that it would operate to discontinue the whole action, including the counterclaim, further alleges at length various facts showing that plaintiff, who was a resident of New York city, would be exposed to excessive difficulty and expense in defending against said counterclaims in a court of this state, etc. A counter affidavit of the defendant was read at the hearing. The court made an order granting so much of the motion as sought to vacate the *ex parte* order of discontinuance, but denying so much of the motion as sought to have the whole action, including the counterclaims, discontinued. The plaintiff appealed from the latter part of said order.

A motion by defendant to dismiss the appeal, on the ground that the order was not appealable, was denied by this court at the June term, 1873. See 33 Wis., 176. The appeal was then argued upon the merits.

*Mariner, Smith & Ordway*, for appellant, contended that the law of counterclaim · is not borrowed directly from the civil law ; that while the doctrine of set-off, as known to the common law, was derived from the " compensation " of the civil law — though materially differing therefrom in that the plea was optional (Barb. Set-off, 21) — yet it is certain that our Wisconsin law of counterclaim came to us bodily from that of New York, and in the exact language in which it was there amended and re-enacted in 1852 (Moak's Van Santv., 612) ; that in all the various discussions and decisions in that state upon the subject, there is no allusion to its origin in the " re-convention " of the civil law ; that the term " counterclaim " was one familiar to the courts of common law, and seems originally to have been synonymous with set-off, which at common law was limited to mutual connected debts, and demands due in the same right (*Hurlbert v. Ins. Co.*, 2 Sum., 477 ;

*Kneedler v. Sternbergh*, 10 How. Pr., 72; *Mee v. Tomlinson*, 4 Ad. & E., 262; *Callandar v. Howard*, 10 C. B., 302); that in the report of the code commissioners of New York which resulted in the enactment, in 1852, of the law of counterclaim as it was afterwards adopted in this state, they make no allusion except to the *common law*, in noticing the history of this form of relief given to a defendant (Moak's Van Santv., 546, 612); that there are more analogies between the law of set-off and the "compensation" of the civil law (La. Code, art. 366) than between counterclaim and reconvention, yet it was never heard that the decrees of the civil jurists in the former case controlled the decisions of the common law courts as to set-off; that at the civil law, in fact, an independent cause of action was not deemed to be "in reconvention," and could only be prosecuted within the domicil of the plaintiff (La. Code, art. 376); that the true history of our law of counterclaim is, that the doctrine of set-off known to the common law was afterwards enlarged by the statute of New York, and in time again enlarged in that state, and extended in 1852 by the introduction of the present law of counterclaim, afterwards adopted bodily in this state; that in New York, during a period of twenty years, an almost unbroken line of decisions had recognized this or a similar statute as controlled and limited by the practice of the common law, so that the continuance and existence of the counterclaim in all cases depended upon the plaintiff's prosecution of his action, of which it was a mere dependent (*Seaboard & Roanoke R. R. Co. v. Ward*, 18 Barb., 596); that the decisions as to the effect of a discontinuance on a cross-bill in equity are not in point, first, because the case under discussion is at law, and, secondly, because a cross-bill is an independent suit in which the parties who bring it may make defendants both those named as plaintiffs and those named as codefendants in the original bill, and in which the parties made defendants therein are brought into court by process of subpœna (2 Barb. Ch. Pr., 131, 132; *Talbot v. McGee*, 4 Monroe, 375; *Slason v. Wright*, 14

Vt., 208; Story's Eq. Jur., § 398); and that no case at law can be found in which this right of entire discontinuance was ever questioned, except where defendant was able to show that he would thereby lose substantial rights, such as the right of pleading the statute of limitations, or the loss of testimony taken by deposition; and in such cases plaintiff's right was not refused, but granted on condition saving to defendant the right so jeopardized. *Hope v. Acker*, 7 Abb. Pr., 308; *Kelly v. Kelly*, 23 Tex., 437; *Buffington v. Quackenboss*, 5 Fla., 196. Counsel further argued that at common law a set-off was *merely a defense* (3 Esp., 104), and plaintiff's discontinuance of his action left nothing to be defended against; that when the statute allowed the set-off to operate as a defense to the extent of plaintiff's demand, and judgment to be obtained in defendant's favor for any *surplus*, instead of requiring a separate suit therefor (Barb. Set-off, 21), a discontinuance, according to the logical result of respondent's theory, would have *divided* defendant's claim, since that part of it which was merely defense must necessarily fall with the discontinuance of the action; that the *counterclaim* seeks to extinguish wholly or in part the plaintiff's claim (being so far in the nature of a *defense*), though it may also (as in this case) seek some affirmative relief, or claim some excess of damages over and above the amount of plaintiff's claim (*Mason v. Heyward*, 3 Minn., 182; *Whalon v. Aldrich*, 8 id., 346; *Koempel v. Shaw*, 13 id., 488); and that the very same reason applies as in the case of set-off, for making a discontinuance of the plaintiff's action operate as a discontinuance of the whole suit.

*Jenkins & Elliott*, for respondent, argued that the question raised by the appeal was *res adjudicata* for the purposes of this case, and the decisions already made herein, even if erroneous, would not be reviewed. *Luning v. The State*, 1 Chand., 264; *Parker v. Pomeroy*, 2 Wis., 112; *Downer v. Cross*, id., 371; *Cole v. Clarke*, 3 id., 323. As to the correctness of those de-

cisions they referred to their argument on the former appeal, 32 Wis., 208-9.

COLE, J.   But little can be said in this case after the two full and able opinions already delivered by Mr. Justice LYON; one on the appeal from the order refusing to strike the cause from the calendar, and the other on the motion to dismiss this appeal.   The questions involved in this appeal were necessarily discussed in those decisions; and, notwithstanding the views there expressed have been sharply criticised by the counsel for the appellant, we are satisfied with their general correctness.   It was in substance held and adjudged in those decisions, that the plaintiff could not discontinue the whole action, even with the leave of court, where the defendant had interposed a counterclaim consisting of a substantive cause of action against him.   Even if these decisions were erroneous, it is very evident that they must stand as the law of this case, upon the familiar principle of *res adjudicata.*   But we think they rest upon sound principles, and that no evil consequences are likely to flow from them.   It is said that it is inequitable not to permit the plaintiff to discontinue the entire action, but force him to remain in a foreign tribunal and litigate, at great delay, difficulty and expense, not only his own claim, but also the counterclaims of the defendant.   But the plaintiff voluntarily sought this tribunal to enforce the collection of his claim against the defendant, and he ought to be willing to submit in its whole extent to the jurisdiction which he has invoked.   It may be a matter attended with difficulty and expense for him to defend against the counterclaims of the defendant at a point so remote from his residence; but this is an inconvenience not unfrequently connected with the prosecution or defense of a suit where the necessary witnesses reside at a distance from the place of trial.   And if the defendant has the right to have the counterclaims which he has interposed, adjudicated and settled

McLeod vs. Bertschy.

in this suit, it is quite obvious that it might be unjust to him to allow the plaintiff now to discontinue the entire action. But furthermore, the court below denied so much of the motion of the plaintiff as sought to have the whole action, including the counterclaims interposed, discontinued ; and it is plain that we cannot reverse that ruling unless we are prepared to affirm the proposition of law that the plaintiff, under the circumstances, had the absolute right to discontinue the whole action without the special leave of the court. And that proposition lies at the foundation of the argument of counsel that the plaintiff has this absolute right to discontinue on payment of costs, and that the code has not changed that right even where a counterclaim is set up by the defendant in the action, upon which affirmative relief is asked. We have already held in this case, after full argument and such examination as we were able to give the matter, that this view of the law was incorrect, and that the plaintiff had no such right to discontinue. This conclusion was reached after an examination of the authorities in New York, to which we were then and have again been referred by counsel. We do not understand that the provisions of the code upon the subject of counterclaims had been construed and settled in New York in 1856, at the time they were enacted in this state. If they had been, it might with reason be contended that in adopting them we took them with the construction which had been placed upon them by the courts of that state. As it was, we felt at liberty to construe them for ourselves, and to carry out their full intent and meaning. It must be conceded that these provisions in regard to counterclaims are a great innovation upon the common law, and consequently in their interpretation analogies are to be sought for in that system of jurisprudence whence these provisions were derived.

These general remarks are made in answer to some things contained in the argument of counsel for the plaintiff, without any purpose to go over the ground covered in the opinions

already filed in this case. I deem it quite unnecessary to add anything to the reasoning of the former decisions. Unless they are attempted to be overruled in the very case in which they were made, this order must be affirmed.

*By the Court.* — The order of the county court is affirmed.